

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

Via CM/ECF                                  July 18, 2024

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

Re:   SEC v. Curt Kramer, et al., 1:24-cv-03498-ER-OTW (S.D.N.Y.)

Dear Judge Ramos:

Pursuant to this Court's minute order dated July 10, 2024, and Rule 2.A.ii of Your Honor's Individual Practices, Plaintiff Securities and Exchange Commission hereby responds to Defendants' July 9 letter, which previews the arguments Defendants intend to make in support of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. In doing so, Defendants advance the same arguments that courts have uniformly rejected in every unregistered dealer case filed by the SEC against convertible note businesses. Those arguments fare no better here.

The SEC's complaint against Curt Kramer and three companies he owns and controls (collectively, "Defendants") charges each with violations of Section 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a), for operating as unregistered dealers.[1]

To state an Exchange Act Section 15(a) claim against a dealer, a plaintiff must plead facts establishing that the defendant (i) bought and sold securities, (ii) as principal rather than as agent for another, (iii) as part of a profit-seeking enterprise, and (iv) on more than a few isolated occasions. *SEC v. LG Capital Funding, LLC*, 22-cv-3353, – F.3d –, 2024 WL 7519598, at *15 (E.D.N.Y. Nov. 13, 2023) (Kuntz, J.) (citing *SEC v. Morningview Fin. LLC*, 22-cv-8142, 2023 WL 7326125, at *13 (S.D.N.Y. Nov. 7, 2023) (Marrero, J.)). A plaintiff must also plead that the defendant was not registered as a dealer or, if the defendant is an individual, that he did not associate with a registered dealer.

Applying this standard to the SEC's allegations and drawing all reasonable inferences in favor of the SEC, the SEC plainly has stated a valid claim against each Defendant. The SEC's complaint alleges that, from at least January 2018 through at least March 2023, Defendants,

---

[1] Exchange Act Section 3(a)(5) defines a dealer to be "any person engaged in the business of buying and selling securities … for such person's own account, through a broker or otherwise … as part of a regular business." 15 U.S.C. § 78c(a)(5)(A), (B) (enacted in 1934, and amended by Congress in 1999). Exchange Act Section 15(a) requires a dealer to register with the SEC; an individual can also satisfy the requirement by associating with a registered dealer. 15 U.S.C. §78o(a)(1). Scienter is not an element of an Exchange Act Section 15(a) violation.

through Kramer, operated a high-volume business in which they privately purchased restricted convertible notes and convertible preferred stock from more than 325 microcap issuers, in more than 2,000 transactions, and then converted the notes and preferred stock into more than 90 billion newly issued shares of free-trading common stock, which they sold into the public markets. Cmpt. ¶¶ 1-3, 46-47. The complaint highlights transactions with three issuers and alleges that the shares sold by Defendants constituted a material percentage (if not a majority) of the issuer's total outstanding shares. Cmpt. ¶¶ 77, 92-93, 106. Defendants engaged in these transactions for the benefit of their own account. Cmpt. ¶¶ 4, 16. The vast majority of Defendants' profits – $60 million out of $75 million as of March 31, 2023 – came from the sale of post-conversion shares of common stock. Cmpt. ¶¶ 3, 45-57. At no point were Defendants registered as dealers or was Defendant Kramer associated with a registered dealer. Cmpt. ¶ 11-14.

Since 2017, the SEC has filed identical charges against convertible note businesses with the same business model. Courts have uniformly rejected motions to dismiss those cases,[2] and granted summary judgment to the SEC,[3] and those rulings have been upheld on appeal.[4] Contrary to Defendants' suggestion (ECF No. 22 at 1), the SEC did not ask for or receive so-called "*Chevron* deference" (which the Supreme Court recently overruled in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024)) in any of those cases. The SEC simply sought, as it does here, to enforce the plain language of Exchange Act 3(a)(5). *Pereira v. Sessions*, 585 U.S. 198, 208–09 (2018) ("[T]he Court need not resort to *Chevron* deference [because] [t]he statutory text alone is enough to resolve this case."); *Bowen v. Georgetown Univ. Hosp.*, 488 S.Ct. 204, 212-13 (1988) (*Chevron* has never applied to agency litigation positions that are not based on regulations, rulings, or adjudications).

In their letter, Defendants recycle old arguments that courts have repeatedly rejected in similar cases.[5] Each argument lacks merit; collectively they leave no doubt that the complaint states a valid claim.

**Statutory Interpretation**: Defendants assert that Congress cannot possibly have intended the words of Exchange Act Section 3(a)(5) to cover convertible note businesses because, according

---

[2] *See, e.g.*, *SEC v. River N. Equity, LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019) (denying motion to dismiss); *SEC v. Keener*, No. 1:20-cv-21254, 2020 WL 4736205 (S.D. Fla. Aug. 14, 2020) (same); *SEC v. Fierro*, No. 20-02104, 2020 WL 7481773 (D.N.J. Dec. 18, 2020) (same); *SEC v. Fife*, No. 20-cv-5527, 2021 WL 5998525 (N.D. Ill. Dec. 20, 2021) (same); *SEC v. Carebourn Cap., LP*, No. 21-cv-2114, 2022 WL 1639515 (D. Minn. May 24, 2022) (same); *Morningview*, 2023 WL 7326125, at *13 (same); *LG Capital*, 2024 WL 7519598, at *13 (same).

[3] *SEC v. Almagarby*, 479 F. Supp. 3d 1266 (S.D. Fla. 2020) (granting SEC's motion for summary judgment); *SEC v. Keener*, 580 F. Supp. 3d 1272 (S.D. Fla. 2022) (same); *SEC v. Fierro*, No. 20-02104, 2023 WL 4249011 (D.N.J. June 29, 2023) (same); *SEC v. Carebourn Cap., LP*, No. 21-cv-2114, 2023 WL 6295032 (D. Minn. Sept. 27, 2023) (same).

[4] *SEC v. Almagarby*, 92 F.4th 1306 (11th Cir. 2024) (affirming grant of SEC's summary judgment motion); *SEC v. Keener*, 102 F.4th 1328 (11th Cir. 2024) (same).

[5] The issues raised in Defendants' July 9 letter have all been heavily briefed in other unregistered dealer cases. In each case, the court ruled in the SEC's favor; some of the courts made their decisions with the benefit of amicus curiae briefs filed in support of defendants in *LG Capital* and *Morningview*, and in the *Almagarby* and *Keener* appeals.

to them, "dealers" execute trades for "customers." But the pre-1934 cases they cite (ECF No. 22 at 2-3 citing *Schafer*, *Donander*, and others) arose in the tax context, under a different statutory dealer definition, which, unlike Exchange Act Section 3(a)(5), expressly required dealers to have customers. Courts have found those cases inapposite to an interpretation of Exchange Act Section 3(a)(5). *See, e.g.*, *Morningview*, 2023 WL 7326125, at *7-8. Defendants also cite *XY Planning* (ECF No. 22 at 3), a Second Circuit case involving an SEC rule (Regulation Best Interest, 17 C.F.R.240.15*l*-1) that established a standard of care for brokers, dealers, and associated persons who make certain recommendations to customers. But, neither the regulation nor the Second Circuit's decision support the proposition that Exchange Act dealers *must* execute trades for customers. *XY Planning Network, LLC v. SEC*, 963 F.3d 244, 248 n.2 (2d Cir. 2020) (recognizing brokers, dealers, and investment advisors "play distinct roles" though the boundaries have blurred since the early 1990s).[6] Defendants' assertion that dealers *must* execute customer orders is also illogical considering that Congress expressly contemplated that a dealer could be the customer. 15 U.S.C. § 78c(a)(5)(A) (contemplating that a dealer will trade for its own account "through a broker or otherwise"). In short, Defendants illegally operated as dealers under the plain language of Exchange Act Section 3(a)(5).

**Fair Notice/Due Process:** Defendants assert that they were not provided fair notice of their obligation to register (ECF No. 22 at 3); but the plain words of Exchange Act Sections 3(a)(5) and 15(a) – drafted by Congress, not the SEC – provided them with ample fair notice and due process. In fact, courts have routinely rejected identical arguments in other cases against convertible note businesses alleging violations of Exchange Act Section 15(a). *See, e.g.. SEC v. Fierro*, 2023 WL 4249011, at *8 (D.N.J. June 29, 2023) (holding that defendant's fair notice defense "fails as a matter of law."); *SEC v. Almagarby*, 92 F.4th 1306, 1319 (11th Cir. 2024) (affirming grant of summary judgment to SEC and finding that defendant convertible note dealer "had notice that he might be subject to agency action"). Contrary to Defendants' suggestion, the SEC was not required to develop guidance and/or to warn convertible note dealers that the Exchange Act's registration provisions applied to them. *See SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020) ("The law does not require the Government to reach out and warn all potential violators on an individual or industry level.") (citing *Dickerson v. Napolitano*, 604 F.3d 732, 745-46 (2d Cir. 2010).[7]

---

[6] The Exchange Act separately defines "brokers" and "dealers." *See* 15 U.S.C. §§ 78c(a)(4) (brokers effect transactions in securities for the account of others), 78c(a)(5) (dealers buy and sell securities for their own account as part of a regular business through a broker or otherwise). Defendants arguments conflate the definitions and suggest that dealers *must* execute on behalf of customers; but a number of the cases they rely on involve brokers not dealers. (ECF No. 22 at 3 (citing *Roth*, and *Ridenour*, both involving unregistered brokers)).

[7] Defendants' assertions that the SEC's entire line of cases against convertible note dealers have been motivated by some personal vendetta of SEC staff members who previously charged Defendant Kramer with other securities violations, or by the SEC's supposed failed attempt to "repeal" a part of SEC Rule 144, a Rule promulgated under the Securities Act of 1933 (ECF No. 22 at 1), are meritless. The SEC will not respond to them here, other than to note that (i) we have alleged that Defendant Kramer is a recidivist violator of the federal securities laws (Cmpt. ¶ 11 & n.1) and (ii) the SEC charged multiple convertible note businesses under Exchange Act Section 15(a) years before it proposed any amendments to SEC Rule 144(d)(3)(ii), all of which is completely irrelevant to the merits of this case.

**<u>Proposed Briefing Schedule</u>**

   Counsel for the SEC and Defendants have agreed on a schedule for Defendants' proposed motion to dismiss, as follows: Defendants to file their moving brief on or before August 23, 2024; SEC to file its opposition brief on or before September 27, 2024; Defendants to file their reply papers on our before October 15, 2024.

Sincerely,

*/s/ Suzanne J. Romajas*

Suzanne J. Romajas
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
RomajasS@sec.gov
Tel: 202-551-4473

*Counsel for Plaintiff*


Cc: All counsel of record (via ECF)