

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

<u>Via CM/ECF</u>                                                                                     December 5, 2024

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

Re:   <u>*SEC v. Curt Kramer, et al.*, 1:24-cv-03498-ER-OTW (S.D.N.Y.)</u>

Dear Judge Ramos:

The Securities and Exchange Commission respectfully responds to Defendants' November 25, 2024 letter notifying the Court of two recent decisions from the United States District Court for the Northern District of Texas, *National Assoc. of Private Fund Mgrs. v. SEC*, 2024 WL 4858589 (N.D. Tex. Nov. 21, 2024) (O'Connor, J.) and *Crypto Freedom Alliance of TX v. SEC*, 2024 WL 4858590 (N.D. Tex. Nov. 21, 2024) (O'Connor, J.). In those decisions, Judge O'Connor vacated an SEC rule not at issue in the SEC's case against Curt Kramer and his controlled entities — *Further Definition of "As a Part of a Regular Business" in the Definition of Dealer and Government Securities Dealer in Connection With Certain Liquidity Providers*, 89 Fed. Reg. 14938 (Feb. 29, 2024) (to be codified at 17 C.F.R. 240.3a5-4) (the "Rule").

Judge O'Connor's decisions are irrelevant to this case because the now-vacated Rule established standards to determine when "certain liquidity providers" acting as "de facto market markers" are required to register as "dealers" under Exchange Act Section 15(a).[1] The SEC's claims against Defendants are not based on the Rule or a "de facto market maker" theory, and the Rule did not apply to Defendants, or to any of the convertible note dealers that the SEC has successfully brought enforcement actions against for violations of Exchange Act Section 15(a). *See* ECF No. 31 (SEC MTD Opp. Br.), at 8.[2]

---

[1] *See* Rule, https://www.sec.gov/files/rules/final/2024/34-99477.pdf, at 9-10, 14, 27, 105, 242-45 (setting forth text of final rule at 242-45 and explaining that the rule's sole focus was on "de facto market makers" and was not intended to address other persons whose activities otherwise fall under Exchange Act 3(a)(5)'s dealer definition, 15 U.S.C. 78c(a)(5)).

[2] Defendants' Motion to Dismiss acknowledged the Rule's inapplicability, arguing that persons subject to the Rule (*i.e.*, de facto market makers) were given a year to register as dealers, while microcap convertible lenders were sued by the SEC. ECF No. 28 (Def. MTD Mov. Br.) at 23-24. The SEC demonstrated that Defendants and the de facto market makers who were subject to the rule did not "bear a reasonably close resemblance" and thus the one-year grace period granted to de facto market markers for registration was not evidence of selective treatment. ECF No. 28 at

Moreover, Judge O'Connor's decisions rest on the erroneous assumption that Congress silently cabined its dealer definition to market participants that have customers. As we explained in our Opposition to Defendants' Motion to Dismiss, the Exchange Act's dealer definition is clear and unambiguous: the distinguishing factor between a dealer and a non-dealer is whether one is in the "regular business" of buying and selling securities for one's own account, not whether one buys from, sells to, or effectuates orders for customers. 15 U.S.C. § 78c(a)(5)(A), (B). That is why every court to have been squarely presented with the issue has concluded that a market participant engaged in high-volume purchases and sales (like those alleged here) is in the regular business of buying and selling securities and is therefore a dealer, regardless of whether the participant had customers. ECF No. 31 at 7-8 (citing cases). This includes the Eleventh Circuit, which has twice rejected the proposition that "an entity *must* execute trades on behalf of a customer to be a 'dealer,'" concluding that "a customer requirement has no grounding in the statutory text; it is nowhere mentioned in the relevant portions of the Exchange Act," and "multiple Exchange Act requirements do apply to a dealer 'who does *not* carry customer accounts' 'or hold funds or securities … for customers.'" *SEC v. Almagarby*, 92 F.4th 1306, 1318 (11th Cir. 2024) (quoting 17 C.F.R. § 240.15c3-1(a)(2)(vi), (6)(ii)). In *SEC v. Keener*, the Eleventh Circuit further explained that "[s]ince the enactment of section 15(a), the 'dealer' definition has been understood to cover a trader 'who *has no customers* but merely trades for his own account through a broker,' so long as his operations 'are sufficiently extensive to be regarded as a regular business.'" 102 F.4th 1328, 1335 (11th Cir. 2024) (quoting Charles H. Meyer, The Securities Exchange Act of 1934 Analyzed and Explained 34 (1934)); *see also SEC v. Morningview Fin. LLC*, 2023 WL 7326125, *6-12 (S.D.N.Y. Nov. 7, 2023). And in any event, the Complaint *alleges* that Defendants had customers, so Defendants' Motion to Dismiss would fail even if the Court adopted Defendants' misguided interpretation of dealer under the Exchange Act. ECF No. 31 at 17 (citing Comp. ¶¶ 22, 26, 63, 79, 94).

Finally, Judge O'Connor recognized that the type of trading activity the microcap lenders in *Almagarby* and *Keener* engaged in – which Defendants here engaged in as well – was distinguishable from the de facto market making function that the Rule addressed. *NAPFM*, 2024 WL 4858589, at *8 (citing *Almagarby*, 92 F.4th at 1318; *Keener*, 102 F.4th at 1334); *CFA of TX*, 2024 WL 4858590 at *3-4 (citing *Almagarby*, 92 F.4th at 1317-18; *Keener*, 102 F.4th at 1334). And in *Keener*, the Eleventh Circuit held that the appellant, who "purchas[ed] convertible debt notes from microcap issuers, convert[ed] those notes into common stock, and [sold] the stock in high volumes in the public market" was not "similarly situated to the liquidity providers" that are the subject of the Rule, underscoring that the decision vacating the Rule is inapposite. 102 F.4th at 1331, 1336.

Sincerely,

*/s/ Suzanne J. Romajas*

Suzanne J. Romajas
Securities and Exchange Commission

*Counsel for Plaintiff*

---

24. Defendants did not have a response to this in their reply papers. ECF No. 35 (Defendants' MTD Reply Br.) at 10.